# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

|  |  |
|---|---|
| MANUEL ERICK CAMACHO HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>Defendants. | Case No. CV 25-05263-SB (DFM)<br><br>Order Re: Motions to Dismiss (Dkts. 9, 12, 17) and Motion to Strike (Dkt. 11) |

## I.   BACKGROUND

Plaintiff Manuel Erick Camacho Hernandez has sued the County of Los Angeles ("the County"), attorney Andrew Linares ("Linares"), the Honorable Scott J. Nord ("Judge Nord"), Family Law Clerks at the Stanley Mosk Courthouse ("Family Law Clerks"), and Mediation Servies at the Stanley Mosk Courthouse ("Mediation Services") (together with Judge Nord and Family Law Clerks, "Judicial Defendants") in connection with child custody proceedings in Plaintiff's pending dissolution matter in the Superior Court of California, County of Los Angeles, captioned Manuel Hernandez v. Fanny Rosaldo Hernandez, Case No. 22STFL07287 (the "Custody Case").

The County, Linares, and Judicial Defendants each filed a Motion to Dismiss. See Dkts. 9 ("County MTD"), 12 ("Linares MTD"), 17 ("Judicial MTD"). Linares also filed a Motion to Strike. See Dkt. 11 ("Linares MTS").

Plaintiff filed oppositions. See Dkts. 20 ("County Opp'n"), 22 ("Linares MTS Opp'n"), 25 ("Judicial Opp'n"). Defendants filed replies. See Dkts. 21 ("County Reply"), 23 ("Linares Reply").[1]

For the reasons set forth below, the Motions to Dismiss are GRANTED with leave to amend. The Motion to Strike is DEFERRED.

## II.    FACTUAL ALLEGATIONS

The following allegations are taken from the Complaint and are accepted as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On July 6, 2022, Plaintiff filed a petition for divorce and sought 50/50 joint custody of his daughter, Itzyana. See Dkt. 1 ("Complaint") ¶ 9; Dkt. 17-2, Judicial Defendants' Request for Judicial Notice ("RJN") Ex. A (Register of Actions).[2] On March 10, 2023, Judge Nord denied Plaintiff's request, instead awarding sole legal and physical custody to Itzyana's mother, Fanny Rosaldo Fernandez, and affording Plaintiff two hours of supervised visitation per week. See Complaint ¶ 10. Plaintiff alleges that Judge Nord's ruling ignored Fanny's history of domestic violence. See id. On April 23, 2023, Judge Nord continued a Request for Order hearing related to custody, maintaining Fanny's sole custody. See id. On July 5, 2023, Plaintiff was granted a restraining order against Fanny. See id. ¶ 11. Judge Nord awarded Plaintiff sole legal and physical custody, but on June 7, 2023, amended the order without a hearing because it was made in error and threatened Plaintiff with sanctions if he pursued the issue. See id.

Plaintiff alleges that the court-appointed mediator, Ingrid Escobar, discriminated against him based on his gender and his daughter's autism

---

[1] Plaintiff filed an unauthorized Sur-Reply, which the Court did not consider. See L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply.").

[2] Judicial Defendants' Request for Judicial Notice is GRANTED.

diagnosis. See id. ¶ 12. Plaintiff alleges that Fanny and her counsel, Linares, engaged in a pattern of harassment through the filing of frivolous motions, misrepresentations, retaliation, and delay tactics. See id. ¶¶ 14-15. Plaintiff alleges misconduct by the Superior Court's law clerks, including providing unauthorized legal advice and pressuring Plaintiff to sign judicial forms that violate his religious beliefs. See id. ¶ 16. Finally, Plaintiff alleges that the County has engaged in an organized effort to block him from gaining custody. See id. ¶ 18.

Based on these allegations, Plaintiff brings causes of action for violations of the First Amendment, Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), and the California Constitution, as well as causes of action for conspiracy and fraud. See id. ¶¶ 19-27. Plaintiff seeks declaratory and injunctive relief as well as damages.

### III.    LEGAL STANDARD

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d 981, 984-85 (9th Cir. 2008). When considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. To

3

survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In resolving a 12(b)(6) motion, the Court follows a two-pronged approach. First, the Court accepts all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citation omitted). Nor must the Court "accept as true a legal conclusion couched as a factual allegation." Id. (citation omitted). Second, assuming the veracity of well-pleaded factual allegations, the Court "determine[s] whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct . . . ." Id.

Courts must "construe pro se complaints liberally and may only dismiss a pro se complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citation omitted). "[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988) (citations omitted).

## IV.  DISCUSSION

The Motions to Dismiss raise similar challenges to the sufficiency of Plaintiff's Complaint and the viability of certain claims. As these arguments

recur across the motions, the Court has organized its analysis by grouping related issues together rather than addressing each motion in isolation.

## A.   *Rooker-Feldman*

The County and Linares argue that the Complaint is barred by the Rooker-Feldman doctrine. See County MTD at 7-9; Linares MTD at 12.

"Under Rooker-Feldman, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal." Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir. 2003). Thus, Rooker–Feldman "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). Rooker-Feldman applies when "the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment." Id. at 1140.

The Custody Case is ongoing. See Register of Actions at 4. Where a district court is "not asked to review the merits of a final state judgment, but rather to enjoin ongoing state proceedings, we conclude that principles of abstention rather than Rooker-Feldman" apply. H.C. ex. Re. Gordon v. Koppel, 203 F.3d 610, 612-13 (9th Cir. 2000); see also Pennzoil Co. v. Texaco, 481 U.S. 1, 10 (1987) (finding that Younger, rather than Rooker-Feldman, applied to § 1983 challenge of ongoing state civil proceedings).

The Superior Court has not issued a final judgment, despite Plaintiff's efforts to obtain federal relief. As such, Rooker-Feldman does not apply. See Mothershed v. Justs. of Supreme Ct., 410 F.3d 602, 604 n.1 (9th Cir. 2005) ("Proceedings end for Rooker-Feldman purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level.").

5

**B.**     *Younger* **Abstention**

Linares and Judicial Defendants argue that Court should abstain under the doctrine of Younger v. Harris, 401 U.S. 37, 91 (1971). See Linares MTD at 13-14; Judicial MTD at 19-21.

In Younger, the U.S. Supreme Court "espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings." Middlesex County Ethics Comm. v. Garden State Bar Ass'n., 457 U.S. 423, 431 (1982). Younger abstention "is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." Cook v. Harding, 879 F.3d 1035, 1038-39 (9th Cir. 2018) (citations omitted).

Here, all four criteria are met. The requirement that state proceedings be ongoing is satisfied. See RJN, Ex. A. Important state interests are implicated. "Family relations are a traditional area of state concern." Moore v. Sims, 442 U.S. 415, 435. "In addition, a state has a vital interest in protecting 'the authority of the judicial system, so that its orders and judgments are not rendered nugatory.'" Koppel, 203 F.3d at 613 (quoting Juidice v. Vail, 430 U.S. 327, 336 n. 12 (1977)). This is a particularly appropriate admonition in the field of domestic relations, over which federal courts have no general jurisdiction, see Ankenbrandt v. Richards, 504 U.S. 689, 697-701 (1992), and in which the state courts have a special expertise and experience, see Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979). Finally, Plaintiff has an adequate state forum in which to pursue his federal claims.

Indeed, state domestic disputes are "precisely the type of case suited to Younger abstention." Koppel, 203 F.3d at 613-14 (explaining that intervention in state custody proceedings "is not the proper business of the federal

judiciary"); <u>Mann v. Conlin</u>, 22 F.3d 100, 106 (6th Cir. 1994) (holding that <u>Younger</u> abstention was appropriate in § 1983 action alleging that a state court judge violated plaintiff's due process rights in custody battle). For these reasons, <u>Younger</u> abstention is required in this case. <u>See</u> <u>Kinkaid v. County of Los Angeles</u>, No. 22-09056, 2023 WL 4681603, at *9 (C.D. Cal. June 6, 2023) (collecting cases concluding that <u>Younger</u> abstention applied to ongoing state family law cases).

Plaintiff responds that <u>Younger</u> abstention is inapplicable, arguing that <u>Loper Bright Enterprises v. Raimondo</u>, 603 U.S. 369 (2024), "rejects deference to state abstention." Judicial Opp'n at 9-10. <u>Loper Bright</u> held that courts may not defer to an agency interpretation of the law simply because a statute is ambiguous, overruling <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), and had nothing to do with <u>Younger</u> or abstention more generally. Otherwise, Plaintiff cites a litany of Supreme Court cases without citations or any explanation as to how they counsel against applying <u>Younger</u> to this case.

"<u>Younger</u> abstention requires dismissal of the federal action." <u>Beltran v. California</u>, 871 F.2d 777, 782 (9th Cir. 1988). However, "an abstention-based stay order, rather than a dismissal, is appropriate when damages are at issue," unless "dismissal is indicated for some other reason"—for example, when the damages claim is "plainly frivolous" or "where a serious affront to the interests of federalism could be averted in no other way." <u>Gilbertson v. Albright</u>, 381 F.3d 965, 975, 984 n.18 (9th Cir. 2004) (citation omitted). <u>See also</u> <u>Equity Lifestyle Props., Inc. v. County of San Luis Obispo</u>, 548 F.3d 1184, 1197 n.23 (9th Cir. 2008) ("<u>Gilbertson</u> did not require a stay for damages claims that would be dismissed as untimely or meritless on the pleadings."). Here, Plaintiff's damages claims should be dismissed, rather than stayed, considering the various deficiencies set forth in this Order.

## C.    Judicial Immunity

Judicial Defendants argue that they are immune from liability in this action. See Judicial Defendants MTD at 13-19.

First, Judicial Defendants argue that Plaintiff's § 1983 and ADA damages claims against Judge Nord are barred by absolute judicial immunity. See id. at 13-16. "A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages." Mireles v. Waco, 502 U.S. 9, 9 (1991) (per curiam) Judicial immunity "is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Id. (citation omitted). It is overcome in only two sets of circumstances, i.e., when the judge's actions are not taken in his or her judicial capacity or when the actions, though judicial in nature, are taken in the complete absence of all jurisdiction. See id. at 11-12. Judicial immunity applies to civil rights actions under § 1983, see Pierson v. Ray, 386 U.S. 547, 554-55 (1967), as well as under the ADA, see Lund v. Cowan, 5 F.4th 964, 970-72 (9th Cir. 2021).

Here, the § 1983 claims against Judge Nord arise from his judicial acts in the Custody Case, namely child custody orders, the scheduling of court dates, and other case management tasks. See Complaint ¶¶ 10-11, 13-14. Such acts are unquestionably ordinary judicial functions protected by judicial immunity. See Duvall, 260 F.3d at 1133 (recognizing court rulings, as well as "exercising control over the courtroom while court is in session[,]" are "normal judicial function[s]"); see also Lund, 5 F.4th at 972 (holding "judicial immunity shields even incorrect or inappropriate statements if they were made during the performance of a judge's official duties[]").

Second, Judicial Defendants argue that immunity also bars Plaintiff's § 1983 injunctive relief claim as well. See Judicial MTD at 16-17. In 1996, Congress amended § 1983 to "expand the scope of judicial immunity by

8

providing that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" Moore v. Urquhart, 899 F.3d 1094, 1104 (9th Cir. 2018) (citation omitted). Plaintiff alleges no facts demonstrating that Judge Nord violated a declaratory decree or that declaratory relief was unavailable.

Third, Judicial Defendants argue that quasi-judicial immunity precludes Plaintiff's damages and § 1983 injunctive relief claims against the Family Law Clerks and Mediation Services. See Judicial Defendants MTD at 17-19. "Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." Mullis, 828 F.2d at 1390 (applying immunity to to clerks' acceptance and filing of incomplete bankruptcy petition and subsequent refusal to accept amended petition).

Such immunity extends to non-judicial officers who perform tasks that are part of the judicial function, including court-appointed mediators in child custody cases. See Prostitis v. Riverside Super. Family Law Ct., No. 20-0026, 2020 WL 3843727, at *6 (C.D. Cal. Apr. 15, 2020) (finding Child Custody Recommending Counselor immune from suit for making recommendation to superior court that plaintiff's ex-wife be given primary custody of child); Karkanen v. Cal., No. 17-06967, 2018 WL 3820916, at *7 (N.D. Cal. Aug. 10, 2018) (finding defendant was "immune for making custody recommendations as part of her duties as a family court mediator and custody recommending counselor"); Todd v. Landrum, No. 12-1770, 2012 WL 5187836, at *2 (E.D. Cal. Oct. 17, 2012) (recognizing "individuals who perform judge-like functions, including those who mediate custody disputes and provide reports to family law courts pursuant to state statute, are entitled to immunity when the events at issue arise from the performance of their duties").

Here, Plaintiff's allegations against the Family Law Clerks and Mediation Services arise from their duties that are part of their judicial function. See Complaint ¶¶ 12 (pertaining to conduct during court-ordered custody mediation sessions), 14 (alleging Family Law Clerks improperly denied Plaintiff's filing), 15 (alleging Family Law Clerks incorrectly told Plaintiff to file a FL-320 form). Accordingly, quasi-judicial immunity applies. Quasi-judicial immunity also applies to Plaintiff's injunctive relief claims brought under § 1983. See Moore, 899 F.3d at 1104 ("The judicial branch encompasses officials other than those with the title 'judge,' such as court clerks.").

## D.   Eleventh Amendment

Judicial Defendants argue Plaintiff's official-capacity § 1983 claims against them are barred by the Eleventh Amendment. See Judicial Defendants MTD at 13.

"The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995). "State officials sued in their official capacities are generally entitled to Eleventh Amendment immunity." Lund, 5 F.4th at 969.

Plaintiff has sued the Judicial Defendants in their official capacity. See Complaint ¶¶ 5, 7-8. However, Judge Nord, Family Law Clerks, and Mediation Services are each an "arm of the state" entitled to sovereign immunity. See Lund, 5 F. 4th at 969 ("The Eleventh Amendment thus applies to Judge Cowan, who serves as a state court judge and is being sued in his official capacity."); Simmons v. Sacramento Cty. Superior Ct., 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment.").

"[T]he Supreme Court recognized in Ex parte Young, 209 U.S. 123 (1908), that plaintiffs can sometimes sue state officials for prospective injunctive relief to prevent future statutory or constitutional harms." Munoz v. Superior Court of Los Angeles County, 91 F.4th 977, 980 (9th Cir. 2024). However, the Ex parte Young exception "does not normally permit federal courts to issue injunctions against state-court judges." Whole Woman's Health v. Jackson, 595 U.S. 30, 39 (2021). "As such, state court judges cannot be sued in federal court in their judicial capacity under the Eleventh Amendment." Munoz, 91 F. 4th at 981.

Accordingly, Plaintiff's claims against the Judicial Defendants are foreclosed by the Eleventh Amendment.

### E.  County Liability

The County argues that it is not a proper defendant because Plaintiff's allegations are aimed at the Superior Court. See County MTD at 6-8.

Plaintiff alleges that the County is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978). But it is "well established that the Superior Courts of the State of California are state, not county entities." Alexis v. County of Los Angeles, No. 15-1529, 2015 WL 3742894, at *3 (C.D. Cal. June 1, 2015) (collecting cases); see also Greater L.A. Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987) ("The official name of the court is the Superior Court of the State of California; its geographical location within any particular county cannot change the fact that the court derives its power from the State and is ultimately regulated by the State. Judges are appointed by California's governor, and their salaries are established and paid by the State."); Saunders v. Law Offices of Elaine Van Beveren, 520 F. App'x 548, 549 (9th Cir. 2013) (explaining that the Superior Court "is an agency of the State, not the County"). Plaintiff's suggestion that the County provides direct funding to the Superior Court and its employees does not by itself render

11

it liable for any misconduct. See Zolin, 812 F.2d at 1110 ("Although the County does pay most of the Superior Court's bills, state case law and constitutional provisions make clear that the Court is a State agency.").

Plaintiff has not been aggrieved by the policies, customs, or practices of the County or County actors. The County is not the proper defendant and absent any separate action asserted, should be dismissed.

**F.    Litigation Privilege and Noerr-Pennington**

Linares argues that all of Plaintiff's claims against him are barred by the litigation privilege and the Noerr-Pennington doctrine. See Linares MTD at 14-16.

"The litigation privilege grants absolute immunity from tort liability for communications made in relation to judicial proceedings." Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 599 (9th Cir. 2010) (quotation omitted). However, it does not apply to federal claims. See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n.10 (9th Cir. 1992). Plaintiff's claims against Linares are based on purported violations of the United States Constitution and federal laws, so the privilege does not apply. See Lumasense Techs., Inc. v. Advanced Eng'g Servs., No. 20-07905, 2021 WL 1197417, at *7 (N.D. Cal. Mar. 30, 2021) ("The litigation privilege also does not apply to LumaSense's three federal causes of action.").

"The Noerr-Pennington doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 643-44 (9th Cir. 2009) (citation omitted). The immunity extends to anything "fairly described as petitions" directed to the government, and conduct incidental to a petition. See Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1184 (9th Cir. 2005). Unlike the litigation privilege, Noerr-Pennington "applies to both the

state claims and the federal claim[s]." <u>Fitbit, Inc. v. Laguna 2, LLC</u>, No. 17-79, 2018 WL 306724, at \*2 (N.D. Cal. Jan. 5, 2018).

The Court applies a three-step analysis to determine whether a defendant's conduct is immunized under <u>Noerr-Pennington</u>: "(1) whether the lawsuit imposes a burden on petitioning rights, (2) whether the alleged activities constitute protected petitioning activity, and (3) whether the statute at issue may be construed to avoid that burden." <u>B&G Foods N.A., Inc. v. Embry</u>, 29 F.4th 527, 535 (9th Cir. 2022). "If the answer at each step is 'yes,' then a defendant's conduct is immunized under Noerr-Pennington." <u>Id.</u>

It appears that Linares can establish all three elements. First, Plaintiff's federal lawsuit plainly burdens Linares' petitioning rights because it seeks to impose liability based on his attorney activity in the Custody Case. <u>See Kearney</u>, 590 F.3d at 645 (holding that plaintiff's suit, which challenged defendants' "discovery communications, interactions with expert witnesses and contractors, and statements to the court," would burden defendants' right to prosecute an eminent domain proceeding because it would burden defendants' ability to bring such action). Second, Linares's activity in the Custody Case plainly constitutes protected petitioning activity. <u>See Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 933 (9th Cir. 2006) (observing that litigation activities which constitute "communications to the court" may be fairly described as petitions). Third, "§ 1983 cannot burden protected petitioning rights." <u>B&G Foods</u>, 29 F.4th at 540.

## G.   **Failure to State a Claim**

Plaintiff's first through sixth causes of action assert constitutional claims under 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was

committed by a person acting under the color of State law." <u>Benavidez v. County of San Diego</u>, 993 F.3d 1134, 1144 (9th Cir. 2021) (citation omitted).

Plaintiff's § 1983 claims against Linares fail to meet the "under color of state law" prong. "[I]t is well-established that lawyers in private practice generally do not act under color of state law when they represent parties in court proceedings." <u>Tanasecu v. State Bar of California</u>, 2012 WL 1401294, at *16 (C.D. Cal. Mar. 26, 2012), <u>aff'd</u>, 569 F. App'x 502, 502-03 (9th Cir. Apr. 14, 2014); <u>see also</u> <u>Simmons</u>, 318 F.3d at 1161 (holding that private parties do not generally act under color of state law for § 1983 purposes, and conclusory allegations that a private party conspired with a state actor to deprive plaintiff of constitutional rights are insufficient to state a claim); <u>Briley v. State of California</u>, 564 F.2d 849, 855 (9th Cir. 1977).

There are four ways to overcome the "presumption that conduct by private actors is not state action," <u>Florer v. Congregation Pidyon Shevuyim, N.A.</u>, 639 F.3d 916, 922 (9th Cir. 2011): (1) the private actor performs a public function; (2) the private actor engages in joint activity with a state actor; (3) the private actor is subject to government compulsion or coercion; or (4) there is a governmental nexus with the private actor. <u>See</u> <u>Kirtley v. Rainey</u>, 326 F.3d 1088, 1092 (9th Cir. 2003). Plaintiff's allegations fail to satisfy any of these four tests.

Moreover, Plaintiff's conspiracy claims generally fail as a matter of law. "[A] party cannot rely merely on allegations that a state judge issued erroneous orders to support a conspiracy claim under § 1983. Rather, the party must provide material facts that show an agreement among the alleged conspirators to deprive the party of his or her civil rights. Otherwise, any party dissatisfied with a state court decision could pursue a claim of conspiracy in federal court." <u>Margolis v. Ryan</u>, 140 F.3d 850, 853 (9th Cir. 1998) (citations omitted). Here, like the plaintiffs in <u>Margolis</u>, Plaintiff relies on unfavorable court rulings

rendered against him in the Custody Case and alleges no specific facts showing Judicial Defendants established any agreement to violate Plaintiff's constitutional rights. Instead, Plaintiff merely asserts that "coordinated actions exceed rulings," Judicial Opp'n at 10, which is as vague as it is conclusory.

## H.    Motion to Strike

Linares argues that Plaintiff's claims are subject to California's "anti-SLAPP" statute. See Dkt. 11. That law provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" is "subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16. The statute facilitates "the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Club Members for an Honest Election v. Sierra Club, 45 Cal. 4th 309, 315 (2008). "Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003).

Given Rule 15's "policy favoring liberal amendment," the Court will defer any ruling under the anti-SLAPP statute until after Plaintiff is afforded an opportunity to amend. See Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004) (concluding that district courts can defer ruling upon an anti-SLAPP motion until after an amended complaint has been filed because "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment"). Indeed, "the purpose of the anti-SLAPP statute, the early dismissal of meritless

15

claims, would still be served if plaintiffs eliminated the offending claims from their original complaint. If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants." Id.

## I.    Leave to Amend

The Court has discretion to dismiss a complaint with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. See id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

Defendants' suggestion that dismissal be with prejudice is compelling. Plaintiff's claims are up against significant obstacles, such as judicial immunity, Eleventh Amendment immunity, and Younger abstention. However, while it is unlikely, it remains possible that some claims could be corrected and therefore the Court will grant leave to amend the complaint.

## V.    CONCLUSION

The Motions to Dismiss filed by the County, Linares, and Judicial Defendants are GRANTED with leave to amend. The Motion to Strike filed by Linares is DEFERRED.

Plaintiff shall file an amended complaint within twenty-eight (28) days.

Date: October 30, 2025

DOUGLAS F. McCORMICK
United States Magistrate Judge

16